EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Oficina de Ética Gubernamental<br><br>Recurrido<br><br>v.<br><br>Elí Díaz Atienza<br><br>Peticionario | Certiorari<br><br>2025 TSPR 128<br><br>216 DPR ___ |

Número del Caso: CC-2025-0163

Fecha: 2 de diciembre de 2025

Representantes legales de la parte peticionaria:

    Lcdo. Edgardo Rivera García
    Lcdo. Joel Andrews Cosme Morales
    Lcdo. Pedro E. Ortiz Álvarez
    Lcdo. Héctor Omar Rivera Vale
    Lcdo. Andrés Guillemard-Noble

Representante legal de la parte recurrida:

    Lcda. Vilma L. Vega Rodríguez

Representantes legales del *Amicus Curiae*:

**Administración de Servicios Generales del Gobierno de Puerto Rico**

    Lcdo. Andrés S. Ríos Ramírez
    Lcdo. José L. Marrero Hernández

Materia: Derecho Administrativo; Ley de la Oficina de Ética Gubernamental – Vicepresidente Ejecutivo de la Autoridad de Acueductos y Alcantarillados no es una persona privada, sino un servidor público; improcedencia de una multa por presunta violación al Art. 4.2 de la Ley por no sostenerse con prueba clara, robusta y convincente.

Este documento está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal Supremo. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| Oficina de Ética Gubernamental<br><br>Recurrido<br><br>v.<br><br>Elí Díaz Atienza<br><br>Peticionario | CC-2025-0163 | Certiorari |
|---|---|---|

Opinión del Tribunal emitida por el Juez Asociado señor ESTRELLA MARTÍNEZ.

En San Juan, Puerto Rico, a 2 de diciembre de 2025.

En esta ocasión, corresponde a este Tribunal examinar y resolver si, dentro del marco de un procedimiento de naturaleza cuasi-penal instado contra un funcionario público de alta jerarquía en la Autoridad de Acueductos y Alcantarillados, la Oficina de Ética Gubernamental de Puerto Rico cumplió con su obligación de evidenciar, mediante prueba clara, robusta y convincente, la imputación formulada en contra del referido funcionario por la alegada infracción al Art. 4.2 (b) de la Ley Orgánica de la Oficina de Ética Gubernamental de Puerto Rico, *infra*.

Con este breve contexto en mente, procedemos a analizar los hechos procesales que enmarcan esta controversia.

I

El 23 de diciembre de 2020, la Oficina de Ética Gubernamental de Puerto Rico (OEG) presentó una *Querella* contra el Sr. Elí Díaz Atienza (señor Díaz Atienza o peticionario), Presidente Ejecutivo de la Administración de la Autoridad de Acueductos y Alcantarillados de Puerto Rico (AAA), por alegado incumplimiento con los incisos (b), (r) y (s) del Art. 4.2 de la Ley Orgánica de la Oficina de Ética Gubernamental de Puerto Rico, Ley Núm. 1-2012, 3 LPRA sec. 1857a. Esto fue por presuntamente autorizar al Sr. Yoniel Arroyo Muñiz (señor Arroyo Muñiz), Vicepresidente Ejecutivo de la Administración de la AAA, a utilizar propiedad pública para su uso personal.

En específico, la OEG alegó que el señor Díaz Atienza utilizó las facultades inherentes a su cargo para autorizar a su subordinado, el señor Arroyo Muñiz, a entregar el vehículo oficial que tenía asignado en las instalaciones de la AAA en Aguadilla, en lugar de la sede en San Juan. A su juicio, esto le permitió al señor Arroyo Muñiz hacer uso personal del vehículo para transportarse desde el área oeste, cerca de su residencia en Moca, hasta su lugar de trabajo en San Juan. Por ello, sostuvo que tal autorización concedió un beneficio no permitido por ley y ocasionó la pérdida de fondos públicos por concepto de peajes, gasolina y mantenimiento cubiertos por la AAA. Consecuentemente,

solicitó la imposición de una multa de hasta $20,000.00 por cada infracción.[1]

El 1 de febrero de 2021, el peticionario presentó su *Contestación a querella*, la cual enmendó el 18 de octubre de 2021. En esencia, adujo que, conforme a la ley, se le asignó al señor Arroyo Muñiz un vehículo para uso oficial debido a su posición y responsabilidades como Vicepresidente de la Administración de la AAA. Asimismo, argumentó que, al amparo de la Orden Administrativa OA-2015-03 de la AAA (OA-2015-03), le autorizó entregar el vehículo en Aguadilla u otra instalación de la corporación con el fin de facilitarle el cumplimiento de sus deberes, permitirle brindar un mejor servicio a los consumidores y atender con prontitud las situaciones de emergencia que surgieran en la AAA. Arguyó que tal autorización era necesaria, ya que el señor Arroyo Muñiz no tenía horario fijo, se le exigía disponibilidad total, incluyendo días feriados, y no laboraba exclusivamente en la sede de San Juan.

Además, planteó que, según requería el Art. 4.2 (b) de la Ley Núm. 1-2012, *supra*, no se podía considerar al señor Arroyo Muñiz como una persona privada, ya que en ese momento era un funcionario público. Por último, negó que se hubiese ocasionado una pérdida de fondos públicos o daños a la

---

[1] El 27 de septiembre de 2021, la OEG presentó una *Querella enmendada* con el fin de modificar las fechas consignadas en la original relacionadas con el período en que el señor Arroyo Muñiz ocupó su cargo como Vicepresidente de la Administración de la AAA.

propiedad pública y afirmó que, en todo caso, se incurrió en un gasto operacional ordinario asociado a las funciones de la AAA.

El 10 de marzo de 2022, la OEG presentó una *Solicitud de resolución sumaria* en la que sostuvo que no existía controversia de hechos materiales y solicitó que se dictara resolución sumaria a su favor. En particular, reiteró que la autorización que el peticionario otorgó al señor Arroyo Muñiz de entregar el vehículo oficial en Aguadilla constituyó un beneficio no permitido por ley. Según su interpretación, ello le permitió utilizar el vehículo como medio de transporte personal para su trabajo sin sufragar el costo con su propio peculio, lo que provocó el desembolso indebido de fondos públicos. A su entender, estos hechos configuran los elementos de los incisos (b), (r) y (s) del Art. 4.2 de la Ley Núm. 1-2012, *supra*, y, por tanto, constituyeron una violación a tal disposición legal.

La OEG también alegó que tales hechos infringieron el Art. 3 de la Ley Uniforme de Vehículos Oficiales del Estado Libre Asociado de Puerto Rico, Ley Núm. 60-2014, 3 LPRA sec. 9093, el cual de ordinario prohíbe a los funcionarios públicos utilizar vehículos oficiales una vez finalizada su jornada laboral.

Por su parte, el 18 de abril de 2022, el señor Díaz Atienza presentó una *Oposición a "solicitud de resolución sumaria de la parte querellante" […]* en la que sostuvo que

la controversia debía resolverse sumariamente a su favor porque no existía prueba de que el vehículo en cuestión fue utilizado ilegítimamente y que, de haber sucedido, el uso no fue autorizado. Según su criterio, la autorización para utilizar y entregar el vehículo en una instalación distinta a la sede de San Juan se otorgó al señor Arroyo Muñiz en consideración del puesto que ostentaba y con el propósito de que realizara gestiones oficiales en todo Puerto Rico, atendiera emergencias operacionales de la AAA y cumpliera con la total disponibilidad que se le exigía.

A su vez, argumentó que la OEG interpretó de forma errada y abarcadora la Ley Núm. 1-2012, *supra*, al imponerle una responsabilidad vicaria que no provee la Ley Núm. 60-2014, *supra*. Agregó que las leyes aplicables no delegaban en el Presidente Ejecutivo de la AAA el deber de velar por el uso y mantenimiento de los vehículos oficiales ni prohibían que un funcionario con las responsabilidades del cargo de Vicepresidente Ejecutivo de la AAA entregara un vehículo oficial en cualquier instalación de la corporación. Incluso, planteó que la Ley Núm. 60-2014, *supra*, resultaba vaga de su faz al no contar, en ese momento, con un reglamento que dispusiera guías sobre el manejo, la entrega y la supervisión de los vehículos oficiales asignados a funcionarios públicos.

El 25 de mayo de 2022, la OEG sometió una *Oposición a solicitud de resolución sumaria a favor del querellado […]*.

En resumen, reiteró que la prueba sustentó todos los elementos de los incisos (b), (r) y (s) del Art. 4.2 de la Ley Núm. 1-2012, *supra*, especialmente el elemento del beneficio no permitido por ley, el cual, a su juicio, conllevó el desembolso indebido de fondos públicos. Por otro lado, rechazó los argumentos sobre la supuesta interpretación errada y abarcadora de la Ley Núm. 1-2012, *supra*, y la alegada vaguedad de la Ley Núm. 60-2014, *supra*.

El 31 de mayo de 2022, el señor Díaz Atienza respondió con una *Réplica a "oposición […]"*. En ese escrito, destacó que la OEG incumplió con las normas procesales aplicables a una oposición a solicitud de resolución sumaria. Negó que existiera alguna autorización para que se diera un uso personal a un vehículo oficial o un beneficio a favor de una persona privada. Afirmó que la autorización concedida tuvo como propósito adelantar un fin público y se otorgó de acuerdo con las responsabilidades del funcionario. Asimismo, recalcó que, según el derecho adoptado con posterioridad al momento de los hechos, la responsabilidad de velar por el uso de un vehículo oficial recae sobre un Gerente de Transporte y no sobre un jefe de agencia, como el Presidente Ejecutivo de la AAA, debido a lo irrazonable que sería exigirle ese deber.

El 25 de enero de 2023, tras evaluar las solicitudes de resolución sumaria, la OEG emitió una *Orden* en la que realizó varias determinaciones de hechos incontrovertidos. Sin

embargo, concluyó que subsistían controversias sobre tres (3) asuntos que le impedían disponer sumariamente del caso, a saber: (1) la jornada laboral del señor Arroyo Muñiz; (2) aspectos vinculados a su puesto de confianza como Vicepresidente Ejecutivo de la AAA; y (3) la forma en que las actuaciones del peticionario menoscabaron la confianza del público en las instituciones gubernamentales. Por tal razón, ordenó la celebración de una *Audiencia*.

Luego de varios trámites procesales, el 28 de junio de 2024, la Oficial Examinadora asignada al caso emitió un informe en el que recomendó archivar las imputaciones contra el peticionario por violación de los incisos (r) y (s) del Art. 4.2 de la Ley Núm. 1-2012, *supra*. En cambio, propuso encontrar responsable al señor Díaz Atienza por la violación del inciso (b) de ese mismo artículo. Por ello, recomendó la imposición de una multa proporcional a los hechos ocurridos.

El 24 de julio de 2024, la OEG emitió una *Resolución* en la que acogió en su totalidad la recomendación de la Oficial Examinadora e impuso al peticionario una multa de $2,000.00 por la infracción imputada. El 19 de agosto de 2024, el señor Díaz Atienza presentó una *Moción de reconsideración*. Sin embargo, el 29 de agosto de 2024 el foro administrativo la denegó mediante una *Resolución en reconsideración*.

Inconforme, el 27 de septiembre de 2024, el peticionario solicitó una *Revisión judicial* ante el Tribunal de Apelaciones. En esta, alegó que la OEG cometió los errores

siguientes: (1) aplicó la Ley Núm. 60-2014, *supra*, pese a su vaguedad al no definir claramente el término "jornada laboral" ni "agencia" como el lugar donde debe entregarse un vehículo oficial y asumió indebidamente la competencia interpretativa de estos asuntos que le correspondía a la Administración de Servicios Generales (ASG); (2) ignoró que la OA-2015-03 autoriza al Presidente Ejecutivo a permitir que ciertos funcionarios entreguen vehículos oficiales en instalaciones designadas, particularmente en situaciones de emergencia y conforme a las operaciones de la AAA; (3) interpretó erróneamente los elementos del Art. 4.2 (b) de la Ley Núm. 1-2012, *supra*, especialmente el concepto de "persona privada"; (4) se apartó del estándar de prueba clara, robusta y convincente al concluir que la entrega del vehículo oficial en las instalaciones de Aguadilla no cualificó bajo la excepción de la OA-2015-03, a pesar del cargo que ostentaba el señor Arroyo Muñiz; e (5) impuso una multa de $2,000.00, sin aplicar el principio de razonabilidad y proporcionalidad.

El 22 de noviembre de 2024, la OEG presentó su *Alegato en oposición*. A modo de síntesis, planteó que la Ley Núm. 60-2014, *supra*, estaba libre de ambigüedades, pues define "jornada laboral" como el tiempo destinado a rendir labores en la agencia y dispone que los funcionarios públicos no deben conservar vehículos oficiales las veinticuatro (24) horas o fuera de horas laborables, salvo en ciertas

excepciones enumeradas por la ley, las cuales no incluyen al Vicepresidente Ejecutivo de la AAA. En cuanto a la aplicabilidad de la OA-2015-03, reiteró que el cargo del señor Arroyo Muñiz no incluía atender directa y personalmente emergencias o asuntos de operación y mantenimiento de la AAA, por lo que no se justificó autorizarle la entrega del vehículo en Aguadilla. Finalmente, reafirmó que la prueba presentada demostró los elementos del Art. 4.2 (b) de la Ley Núm. 1-2012, *supra*, y la procedencia de la imposición de la multa.

El 29 de enero de 2025, el Tribunal de Apelaciones dictó una *Sentencia* en la que confirmó el dictamen recurrido. En primer lugar, resolvió que la Ley Núm. 60-2014, *supra*, define adecuadamente los términos impugnados. En segundo lugar, concluyó que, dado que las funciones del señor Arroyo Muñiz no estaban relacionadas con la atención de emergencias vinculadas a la operación y mantenimiento de los sistemas de la AAA, el peticionario carecía de facultad para asignarle un lugar de entrega alterno a la sede de San Juan.

Por otra parte, determinó que, según la evidencia del expediente, el peticionario, en su carácter de funcionario público, utilizó los deberes y facultades de su cargo, así como propiedad pública, para propiciar al señor Arroyo Muñiz —en su carácter de persona privada— un beneficio no permitido por ley. En específico, le permitió utilizar el vehículo oficial para transportarse desde un área limítrofe a su

residencia hasta su empleo durante ciento veintiséis (126) días, lo que constituyó un beneficio en violación al Art. 4.2 (b) de la Ley Núm. 1-2012, *supra*. A tales efectos, confirmó que la interpretación de la OEG respecto a ese inciso fue correcta y, de igual forma, determinó que del expediente surgía prueba clara, robusta y convincente de todos los elementos de la infracción, así como para concluir que la multa impuesta resultó razonable conforme a los actos cometidos.[2]

Insatisfecho, el 20 de marzo de 2025, el señor Díaz Atienza sometió una *Petición de certiorari* ante este Tribunal en la que señaló, en esencia, que el foro apelativo erró al: (1) permitir que la OEG aplicara la Ley Núm. 60-2014, *supra*, cuando esa tarea le corresponde a la ASG; (2) no interpretar que la OA-2015-03 faculta al Presidente Ejecutivo de la AAA a designar puntos alternos de entrega de vehículos oficiales; (3) concluir incorrectamente que el uso del vehículo oficial por el señor Arroyo Muñiz constituyó un beneficio prohibido por la ley en violación del Art. 4.2 (b) de la Ley Núm. 1 2012, *supra*, cuando fue utilizado en el ejercicio de los deberes del cargo; (4) no reconocer que, según su cargo, el señor Arroyo Muñiz cualificaba bajo una de las excepciones de la OA-2015-03; (5) descartar prueba pericial que corroboró

---

[2]Sobre este dictamen, el 14 de febrero de 2025, el peticionario presentó una *Solicitud de reconsideración*, la cual fue declarada no ha lugar mediante una *Resolución* dictada el 18 de febrero de 2025.

que la asignación del vehículo oficial fue consistente con la legislación aplicable y respondió a directrices federales sobre infraestructuras críticas; (6) no considerar el testimonio de una asesora legal de la AAA, redactora de la OA-2015-03, dirigido a probar que la referida orden administrativa autorizó la entrega de vehículos oficiales en instalaciones distintas si el funcionario atendía situaciones de emergencia o de atención inmediata; (7) aplicar incorrectamente el estándar de evidencia sustancial; y (8) brindarle deferencia a la OEG sin considerar el caso federal *Loper Bright Enterprises v. Raimondo*, 603 US 369 (2024) y, así, permitir que la agencia impusiera su interpretación del estatuto sin que el Poder Judicial ejerciera su deber de determinar el significado de la ley.

El 2 de mayo de 2025 emitimos una *Resolución* en la que expedimos el auto de *certiorari* solicitado. Más adelante, el peticionario presentó una *Moción informativa al amparo de la Regla 33(k)* en la que solicitó que se aceptara su escrito de *certiorari* como su alegato en los méritos.

Por su parte, el 11 de junio de 2025, la OEG presentó un escrito titulado *Alegato de la parte recurrida* en el que reiteró los argumentos expuestos ante los foros inferiores.

Cabe mencionar que, el 20 de agosto de 2025, la Administración de Servicios Generales de Puerto Rico (ASG)

solicitó comparecer como *amicus curiae*.[3] El 26 de agosto de 2025 declaramos ha lugar su petición.

Evaluados los argumentos de ambas partes, procedemos a resolver, no sin antes revisar el Derecho aplicable que rige esta controversia.

**II**

**A**

Conforme a la Sección 4.5 de la Ley Núm. 38-2017, Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico (LPAU), 3 LPRA sec. 9675, el alcance de la revisión judicial es el siguiente: (1) "el tribunal podrá conceder el remedio apropiado si determina que el recurrente tiene derecho a un remedio"; (2) "las determinaciones de hechos de las decisiones de las agencias serán sostenidas por el tribunal, si se basan en evidencia sustancial que obra en el expediente administrativo"; y (3) "las

_____

[3]En su petición, informó que es el organismo gubernamental encargado de la administración y control de todos los vehículos de motor y demás medios de transportación, incluyendo sus partes accesorias y los servicios necesarios para su mantenimiento cuando son propiedad o están en uso del Poder Ejecutivo. Por ello, señaló que comparece debido a la importancia que reviste todo lo relacionado con el gasto público, particularmente en controversias como la presente, que inciden o se vinculan con su área de peritaje. Entre estas se incluyen los asuntos relacionados con la adquisición, mantenimiento, asignación, autorización, uso y disposición de la flota vehicular del Gobierno de Puerto Rico. Así, solicitó autorización para comparecer como *amicus curiae* con el propósito de brindar una óptica que complemente los argumentos, datos e información que presenten las partes.

conclusiones de derecho serán revisables en todos sus aspectos por el tribunal".

A tenor con lo anterior, el estándar de revisión judicial aplicable al *quantum* de prueba requerido para las determinaciones de hecho es el de evidencia sustancial que obre en el expediente. Ello obedece a que el expediente administrativo constituye la base exclusiva tanto para la decisión de la agencia en el procedimiento adjudicativo como para cualquier revisión judicial posterior. *Graciani Rodríguez v. Garaje Isla Verde*, 202 DPR 117, 128 (2019). Por su parte, el concepto de evidencia sustancial se define como "la prueba relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión". *Rolón Martínez v. Supte. Policía,* 201 DPR 26, 36 (2018).

Igualmente, hemos reconocido que el alcance de la revisión judicial se ve limitado a instancias donde

> (1) la determinación administrativa no está basada en evidencia sustancial; (2) el ente administrativo erró en la aplicación o interpretación de las leyes o reglamentos que se le ha encomendado administrar; (3) el organismo administrativo actuó arbitraria, irrazonable o ilegalmente, realizando determinaciones carentes de una base racional, o (4) la actuación administrativa lesionó derechos constitucionales fundamentales. *Super Asphalt v. AFI y otro,* 206 DPR 803, 819 (2021).

### B

La Ley Orgánica de la Oficina de Ética Gubernamental de Puerto Rico, Ley Núm. 1-2012, 3 LPRA sec. 1854 *et seq.*, establece el marco normativo que regula la conducta ética de

los servidores y exservidores públicos del Poder Ejecutivo. En este contexto, el estatuto tiene como objetivo principal atender los retos del servicio público para garantizar que los intereses personales de los servidores públicos no sustituyan los intereses de la ciudadanía. Por esta razón, su misión incluye, entre otros aspectos, la educación de los funcionarios públicos para que, en el desempeño de sus funciones, exhiban los valores de bondad, confiabilidad, justicia, responsabilidad, respeto y civismo que deben guiar la administración pública. Exposición de Motivos y Art. 4.1 de la Ley Núm. 1-2012, *supra*.

Cabe mencionar que, el Art. 7.2 de la precitada ley dispone que, al concluir el proceso investigativo sobre un servidor público de la Rama Ejecutiva, si la OEG entiende que se ha infringido alguna disposición de la ley o de las normas promulgadas bajo su autoridad, procederá con la presentación de una querella y llevará a cabo un procedimiento de adjudicación, conforme a sus disposiciones y a las de la LPAU, *supra*.

En lo pertinente a la controversia que nos ocupa, el inciso (b) del Art. 4.2 de la Ley Núm. 1-2012, *supra*, sobre prohibiciones éticas de carácter general, dispone que "un servidor público no puede utilizar los deberes y las facultades de su cargo ni la propiedad o los fondos públicos para obtener, directa o indirectamente, para él o para una

persona privada o negocio, cualquier beneficio que no esté permitido por ley".

Por lo tanto, bajo el contexto de los hechos imputados en este caso, para que se configure una violación a esta disposición estatutaria, deben concurrir los requisitos siguientes: (1) que se trate de un servidor público; (2) que haya utilizado los deberes y facultades de su cargo, propiedad o fondos públicos; (3) con el fin de proporcionarse para sí mismo, a una persona privada o negocio, directa o indirectamente; (4) cualquier beneficio que no esté permitido por ley.

Para la comprensión de los elementos antes mencionados es necesario examinar, entre otros, las siguientes definiciones del Art. 1.2 de la Ley Núm. 1-2012, *supra*, a saber:

> (i) Beneficio — cualquier provecho, utilidad, lucro o ganancia, sin limitar el término a una ganancia pecuniaria o material, sino que denota cualquier forma de ventaja.
>
> […]
>
> (aa) **Persona privada — persona natural o jurídica, sin incluir las entidades públicas.**
>
> […]
>
> (gg) **Servidor público — persona en el Gobierno que interviene en la formulación e implantación de la política pública o no, aunque desempeñe su encomienda permanente o temporalmente, con o sin remuneración.** También, incluye al contratista independiente cuyo contrato equivale a un puesto o cargo, o que entre sus responsabilidades está la de intervenir directamente en la formulación e implantación de la política pública. (Negrillas suplidas).

## C

De ordinario, el *quantum* de prueba necesario para prevalecer en el ámbito administrativo es el de preponderancia de la prueba. Sin embargo, en *OEG v. Martínez Giraud*, 210 DPR 79, 93 (2022), este Tribunal determinó que los procedimientos administrativos que involucran violaciones éticas, por su naturaleza cuasi-penal, deben ser evaluados a través de un crisol más riguroso. Ello se debe a las implicaciones que pueden derivarse de las decisiones de la OEG para los funcionarios públicos que resulten incursos en violaciones éticas. Íd. Estas implicaciones incluyen multas cuantiosas que pueden alcanzar hasta veinte mil dólares ($20,000.00) por cada infracción, suspensión de empleo o sueldo, e incluso, en el peor de los escenarios, la destitución o el despido del cargo público, lo que afectaría el derecho del funcionario público a ganarse el sustento. Íd.; Art 4.7 (c) de la Ley Núm. 1-2012, *supra*.

En consecuencia, en *OEG v. Martínez Giraud*, *supra*, establecimos que las determinaciones adjudicativas de la OEG requieren satisfacer un estándar probatorio claro, robusto y convincente, de manera tal que produzca en el juzgador o en la juzgadora de los hechos una convicción permanente de que los asuntos fácticos son altamente probables. A su vez, ese estándar exige superar y descartar aquellos planteamientos basados en conjeturas y en relatos de terceros. Íd., pág. 97. Este es, por tanto, el *quantum*

probatorio requerido para penalizar cualquier infracción conforme a la Ley Núm. 1-2012, *supra*.

**D**

La Ley Uniforme de Vehículos Oficiales del Estado Libre Asociado de Puerto Rico, Ley Núm. 60-2014, 3 LPRA sec. 9091 *et seq.*, se creó en respuesta a la realidad económica de Puerto Rico y con el propósito de estar acorde con los planes de mitigación y ahorro para el gobierno de Puerto Rico. Así, mediante esta ley se limita el uso de vehículos oficiales por parte de funcionarios públicos o jefes de agencias a la jornada laboral. Íd., Exposición de Motivos. Esto es precisamente porque la asignación de vehículos oficiales a los jefes de agencias o funcionarios públicos fuera de la jornada laboral resulta contraria a la realidad económica que enfrenta el país. Íd.

A tales efectos, el Art. 3 de la Ley Núm. 60-2014, *supra*, dispone como prohibición que:

> Ningún Jefe de Agencia o Funcionario Público está autorizado a utilizar cualquier vehículo oficial una vez concluida la jornada laboral, independientemente el vehículo se haya adquirido mediante compraventa o arrendamiento por cualquier otro departamento, dependencia, instrumentalidad, o corporación pública, de la Rama Ejecutiva del Estado Libre Asociado de Puerto Rico, incluyendo aquellas que se encuentran en Estados Unidos. Esta prohibición también incluye cualquier vehículo oficial sufragado con fondos del Estado Libre Asociado de Puerto Rico, al amparo del Artículo 8 de la Ley Núm. 77 de 19 de junio de 1979, según enmendada.

Sin embargo, el Art. 5 de la precitada disposición legal enumera algunas excepciones para ciertos funcionarios y funcionarias a quienes no les aplica el estatuto, debido a que las funciones inherentes de sus cargos están relacionadas con la seguridad pública. Entre estos figuran el Gobernador o la Gobernadora, el Secretario o la Secretaria de Estado, el Secretario o la Secretaria de Justicia, entre otros.

En su Art. 2, la Ley Núm. 60-2014, *supra*, preceptúa varias definiciones relevantes para las controversias presentes en este caso, a saber:

> (a) Funcionario Público. — Significa aquellas personas que ocupan cargos o empleos en el Gobierno del Estado Libre Asociado de Puerto Rico que están investidos de parte de la soberanía del Estado, por lo que intervienen en la formulación e implantación de la política pública.
>
> […]
>
> (c) Jornada Laboral. — Significa el periodo destinado a rendir labores en una agencia, que puede extenderse a más de ocho (8) horas diarias, incluyendo los fines de semana.
>
> (d) Vehículo Oficial. — Significa el vehículo de motor asignado a los jefes de agencia, ya sea aquellos bajo la jurisdicción de la Administración de Servicios Generales, como aquellos adquiridos por otro departamento, dependencia, instrumentalidad o corporación pública, mediante compraventa, arrendamiento, arrendamiento financiero (leasing), o cualquier otro negocio jurídico realizado total o parcialmente con fondos públicos.

**E**

La OA-2015-03 del 20 de julio de 2015 establece las normas para el uso de los vehículos oficiales de la Autoridad

de Acueductos y Alcantarillados (AAA). Su propósito es destacar la importancia de conocer y cumplir con las disposiciones legales aplicables, a fin de asegurar un uso prudente y razonable de estos vehículos.

Tras sentar las bases legales, la OA-2015-03, en su página 3, define la política de la agencia en cuanto al uso de los vehículos oficiales, a saber: (1) la prohibición de usar los vehículos para asuntos personales, excepto para el período destinado a alimentos; (2) el uso de una bitácora y el contenido necesario que se debe registrar en la misma; (3) la directriz de que los funcionarios deberán entregar el vehículo oficial en su lugar regular de trabajo al terminar la jornada laboral.

No obstante, la OA-2015-03 establece dos (2) excepciones al requisito de entregar el vehículo en el lugar regular de trabajo al concluir la jornada laboral. En concreto, dispone que:

> […] aquellos funcionarios y empleados de la Autoridad una vez concluida su jornada laboral, entregarán el vehículo oficial que utilicen para realizar sus funciones en el lugar regular de trabajo. Sin embargo, aquellos funcionarios y empleados de la Autoridad que tienen la obligación de atender de forma directa y personal cualquier emergencia o situación que requiera atención inmediata relacionada con la operación y mantenimiento de los sistemas e instalaciones de agua y alcantarillados de la Autoridad, una vez concluida su jornada laboral entregarán el vehículo oficial en las instalaciones designadas por el Presidente Ejecutivo o su representante autorizado. Para determinar la instalación en la que se entregará el vehículo se tomará en consideración la naturaleza de las funciones

que realiza el funcionario y/o empleado, la costo-eficiencia que representa para la Autoridad y para los servicios que presta a la ciudadanía; y el espacio y seguridad con que cuenta la instalación.

Cuando un funcionario o empleado esté laborando en un proyecto urgente o de emergencia que requiera su presencia hasta horas de la madrugada y se torne en irrazonable y/o peligroso para su seguridad personal entregar el vehículo en la instalación designada, el Presidente Ejecutivo o su representante autorizado, evaluarán la situación y podrán autorizar al funcionario o empleado, por vía de excepción, y para cada evento en específico, a llevarse el vehículo hasta su residencia. Al día siguiente, el empleado entregará el vehículo oficial en las instalaciones designadas y documentará en la bitácora tal situación. Íd., pág. 3.

Expuesto el Derecho pertinente, procedemos a discutir su aplicación a esta controversia.

### III

En esencia, corresponde a este Tribunal determinar si la evidencia contenida en el expediente administrativo cumplió con el estándar de prueba clara, robusta y convincente para responsabilizar al señor Díaz Atienza de la infracción del Art. 4.2 (b) de la Ley Núm. 1-2012, *supra*. Eso es, si cumplió con el estándar requerido en casos ante la OEG en los que se imputan violaciones éticas. *OEG v. Martínez Giraud*, *supra*.

Tras un análisis detallado de la documentación del expediente y de los escritos de ambas partes, concluimos que la evidencia presentada no supera el estándar exigido en procedimientos disciplinarios por violaciones éticas ante la

OEG. A continuación, se exponen las razones que sustentan esta determinación.

A modo de repaso, la OEG le imputó al señor Díaz Atienza, Presidente Ejecutivo de la AAA, la violación de los incisos (b), (r) y (s) del Art. 4.2 de la Ley Núm. 1-2012, *supra*. De acuerdo con la *Querella*, el peticionario alegadamente utilizó las facultades inherentes a su cargo para autorizar a su subordinado, el señor Arroyo Muñiz, entonces Vicepresidente Ejecutivo de la AAA, a entregar el vehículo oficial que tenía asignado en las instalaciones de Aguadilla de la AAA, en lugar de hacerlo en la sede de San Juan. Como resultado de esta autorización, la agencia alegó que el señor Arroyo Muñiz obtuvo un beneficio no permitido por ley al recibir transportación personal desde el área oeste de la isla, cerca de su residencia, hasta su lugar de trabajo en San Juan, sufragada con fondos públicos y realizada fuera de su jornada laboral.

Conforme se indicó, la Oficial Examinadora emitió un informe que la OEG adoptó en su totalidad. A consecuencia de ello, la agencia archivó las imputaciones relacionadas con los incisos (r) y (s) del Art. 4.2 de la Ley Núm. 1-2012, *supra*, y, en cambio, determinó que el señor Díaz Atienza incurrió en violación del inciso (b) de ese artículo. Por consiguiente, le impuso una multa administrativa de $2,000.00.

Posteriormente, el Tribunal de Apelaciones confirmó el dictamen recurrido al concluir que del expediente administrativo surgía evidencia clara, robusta y convincente sobre los elementos de la infracción imputada al amparo del inciso (b) del Art. 4.2 de la Ley Núm. 1-2012, *supra*. Específicamente, concluyó que el peticionario, en su carácter de funcionario público, utilizó los deberes y facultades de su cargo, así como propiedad pública, para otorgar al señor Arroyo Muñiz —en su carácter de persona privada— un beneficio no permitido por ley. De igual modo, razonó que el peticionario carecía de facultad para asignarle al señor Arroyo Muñiz un lugar alterno de entrega del vehículo oficial, toda vez que no le resultaban aplicables las excepciones previstas en la OA-2015-03 de la AAA ni en el Art. 5 de la Ley Núm. 60-2014, *supra*.

En este contexto, el señor Díaz Atienza nos reitera que el Tribunal de Apelaciones erró al validar la determinación de la agencia administrativa. Por su parte, la OEG afirma que su decisión se fundamentó en evidencia clara, robusta y convincente que figuraba en el expediente administrativo, la cual estableció los elementos exigidos por el inciso (b) del Art. 4.2 de la Ley Núm. 1-2012, *supra*.

Conviene recalcar que, para que se configure una infracción al precitado artículo, corresponde a la OEG probar los elementos siguientes: (1) que la persona imputada se trate de un servidor público; (2) que haya utilizado los

deberes y facultades de su cargo, propiedad o fondos públicos; (3) con el fin de proporcionarse para sí mismo, a una persona privada o negocio, ya sea de manera directa o indirecta; (4) cualquier beneficio que no esté permitido por ley.

En primer lugar, del análisis del expediente administrativo se desprende que, para la fecha de los hechos imputados —esto es, desde el 4 de febrero de 2017 hasta el 27 de febrero de 2020— el señor Díaz Atienza se desempeñaba como Presidente Ejecutivo de la AAA.[4] Entre la descripción de sus funciones figuraba "participa[r] activamente, con el Gobernador de Puerto Rico y el Presidente de la Junta de Directores, **en la formulación e implementación de la política pública de la Autoridad…**" (Negrillas suplidas).[5]

Precisamente, la definición de "servidor público" del Art. 1.2 (gg) de la Ley Núm. 1-2012, *supra*, abarca a toda **"persona en el Gobierno que interviene en la formulación e implantación de la política pública"** "aunque desempeñe su encomienda permanente o temporalmente, con o sin remuneración." (Negrillas suplidas). Por lo tanto, quien ocupa el puesto en cuestión es un servidor público bajo esa definición. En consecuencia, la posición ocupada por el

---

[4]Véase, *Certificación* emitida el 27 de abril de 2021 por la Directora de Recursos Humanos y Relaciones Laborales de la AAA referente al señor Díaz Atienza, Apéndice del peticionario, pág. 194.

[5]Íd., pág. 195.

peticionario satisface el primer elemento exigido en el inciso (b) del Art. 4.2 de la Ley Núm. 1-2012, *supra*.

En segundo lugar, la OA-2015-03 de la AAA, *supra*, establece las normas aplicables a la entrega de todo vehículo de la corporación. En términos generales, exige que los vehículos oficiales sean devueltos en el lugar regular de trabajo de las personas a quienes se les asignaron al concluir su jornada laboral. No obstante, la misma disposición contempla dos (2) excepciones a esta regla **mediante las que se faculta expresamente al Presidente de la AAA para designar el lugar alterno de entrega.** De manera específica, la excepción dispone que

> […] aquellos funcionarios y empleados de la Autoridad que tienen la obligación de atender de forma directa y personal cualquier emergencia o situación que requiera atención inmediata relacionada con la operación y mantenimiento de los sistemas e instalaciones de agua y alcantarillados de la Autoridad, una vez concluida su jornada laboral entregarán el vehículo oficial en **las instalaciones designadas por el Presidente Ejecutivo o su representante autorizado.** Íd., pág. 3. (Negrillas suplidas).

De acuerdo con lo anterior, y conforme surge del expediente administrativo, no cabe duda de que el peticionario autorizó al señor Arroyo Muñiz, en su carácter de Vicepresidente Ejecutivo de la AAA, a utilizar las instalaciones de la corporación pública en Aguadilla como lugar de estacionamiento y entrega del vehículo oficial que

tenía asignado.[6] **Esta acción, realizada por el señor Díaz Atienza, se llevó a cabo en el pleno ejercicio de las facultades inherentes al cargo de Presidente Ejecutivo de la AAA y en virtud de las prerrogativas que le confieren las leyes aplicables.** En particular, se trató de la facultad discrecional que le corresponde para designarle a un subordinado una instalación distinta a su lugar regular de trabajo a los fines de la entrega del vehículo oficial.[7]

A juicio de este Tribunal, tales hechos demuestran que el peticionario hizo uso de los deberes y facultades propios de su posición al otorgar la referida autorización, lo que cumple con el segundo elemento previsto en el inciso (b) del Art. 4.2 de la Ley Núm. 1-2012, *supra*.

No obstante, la OEG no presentó evidencia clara, robusta y convincente respecto a los dos (2) últimos elementos del inciso (b), los cuales son precisamente los medulares para configurar una conducta antiética. Veamos.

A tenor con el inciso (aa) del Art. 1.2 de la Ley Núm. 1-2012, *supra*, el concepto de "persona privada" se refiere a toda "persona natural o jurídica, sin incluir las entidades públicas". Íd. Ello contrasta con el inciso (gg) del precitado artículo en cuanto define "servidor público" como

---

[6]Íd., *Certificación* suscrita el 15 de abril de 2019 por el señor Díaz Atienza, pág. 313.

[7]Íd., *Certificación* emitida el 27 de abril de 2021 por la Directora de Recursos Humanos y Relaciones Laborales de la AAA referente al señor Díaz Atienza, pág. 195; Orden Administrativa OA-2015-03 de la AAA, pág. 3.

aquella "persona en el Gobierno que interviene en la formulación e implantación de la política pública o no, aunque desempeñe su encomienda permanente o temporalmente, con o sin remuneración". En consecuencia, ambas categorías se encuentran claramente separadas, lo que evidencia que son distintas y mutuamente excluyentes.

Del análisis del expediente administrativo se desprende que, durante el período comprendido entre el 2 de marzo de 2017 y el 4 de mayo de 2018, el señor Arroyo Muñiz ocupó el cargo de Vicepresidente Ejecutivo de la AAA. Entre la descripción de sus funciones se incluía, expresamente, **"participa[r] activamente, en la formulación e implementación de la política pública de la Autoridad…"** (Negrillas suplidas).[8] Por lo tanto, es forzoso concluir que el señor Arroyo Muñiz ocupó un cargo de servidor público y, en consecuencia, contrario a la determinación de la OEG y del Tribunal de Apelaciones, no se le puede considerar una persona privada a los efectos de la Ley Núm. 1-2012, *supra*.

Incluso, como ya se mencionó, de los autos de este caso surge que el señor Díaz Atienza ostentó la condición de servidor público conforme a la definición establecida en la ley aplicable. De hecho, esta constituyó la primera determinación de hechos emitida por la OEG[9] y formó parte de

---

[8]Íd., *Certificación* emitida el 27 de abril de 2021 por la Directora de Recursos Humanos y Relaciones Laborales de la AAA referente al señor Arroyo Muñiz, pág. 203.

[9]Íd., *Informe de la Oficial Examinadora*, pág. 102.

sus propias alegaciones en la *Querella* original y la *Querella enmendada*, respectivamente. **En igual sentido, dado que el cargo de Presidente Ejecutivo de la AAA se reconoce como posición de servidor público, resulta razonable concluir que la persona que ocupe el puesto inmediatamente subordinado — en este caso, el señor Arroyo Muñiz como Vicepresidente Ejecutivo de la misma corporación— también debe ser clasificada como servidor público.** Esta conclusión cobra aún mayor fuerza si se considera que el Vicepresidente de la AAA es quien "[r]epresenta al Presidente Ejecutivo en las actividades que le delegue…", lo que evidencia que sus funciones no son ajenas a la naturaleza pública de la gestión, sino que forman parte integral de la dirección institucional de la corporación.[10]

Al omitir tal reconocimiento, la OEG incurrió en una apreciación contradictoria, pues mientras aceptó sin reparos que el Presidente Ejecutivo es un servidor público, sostuvo lo contrario respecto al Vicepresidente, a pesar de la evidente similitud en la jerarquía, naturaleza y responsabilidad de ambos cargos. Ante ese cuadro, bajo las circunstancias particulares de esta controversia y en el contexto cuasipenal que nos ocupa, no se configuran los elementos de pretender beneficiar ilegalmente a una persona privada.

---

[10] Íd., *Certificación* emitida el 27 de abril de 2021 por la Directora de Recursos Humanos y Relaciones Laborales de la AAA referente al señor Arroyo Muñiz, pág. 204.

Cabe destacar, además, que entre los requisitos especiales del cargo de Vicepresidente Ejecutivo de la AAA se establecía la obligación de que su titular contara con "[d]isponibilidad para trabajar fuera del horario regular de trabajo, incluyendo sábados, domingos y días feriados".[11] Por su parte, la Ley Núm. 60-2014, *supra*, al definir "jornada laboral", prevé expresamente la posibilidad de extenderla más allá de las ocho (8) horas diarias e, incluso, a los fines de semana. Esto demuestra que el referido puesto exigía una disponibilidad prácticamente permanente. En efecto, durante la vista celebrada en este caso, la Directora de Recursos Humanos declaró que el puesto ocupado por el señor Arroyo Muñiz se consideraba uno de carácter "veinticuatro siete".[12]

Por último, entre otras funciones, el señor Arroyo Muñiz era responsable del funcionamiento de los Directorados, incluyendo a Manejo de Emergencias de la AAA.[13] A su vez, **"participa[r]… en el desarrollo e implementación de planes de contingencia para atender situaciones de emergencia y conflictos laborales que afecten las operaciones y el**

---

[11]Íd.

[12]Íd., *Transcripión de la Audiencia* celebrada el 8 de junio de 2023, pág. 618.

[13]Íd., *Certificación* emitida el 27 de abril de 2021 por la Directora de Recursos Humanos y Relaciones Laborales de la AAA referente al señor Arroyo Muñiz, pág. 203.

**servicio de la Autoridad.**"[14] (Negrillas suplidas). Precisamente, una de las determinaciones de hechos de la OEG evidencia lo anterior. En particular, la determinación número veinte (20) establece que

> [l]uego del paso de los huracanes Irma y María, el señor Arroyo Muñiz estuvo a cargo del monitoreo de todos los servicios de acarreo de agua a las áreas afectadas, así como el proceso de distribución y cotejo de tanques de agua a las áreas afectadas por la falta de servicio en el área Oeste, debido a la ruptura de la represa Guajataca en Quebradillas. **En suma, atendió la emergencia en distintas partes de la isla y sirvió como corredor ("runner") y vínculo de comunicación entre la Región en San Juan y la Región Noroeste.** (Negrillas suplidas).[15]

Así pues, al considerar las responsabilidades y funciones del puesto del señor Arroyo Muñiz, resulta irrazonable sostener que, en el contexto de esta controversia, se trataba de una persona privada o que recibió un beneficio ilegal a los efectos de la Ley Núm. 1-2012, *supra*. La naturaleza de su cargo, como Vicepresidente Ejecutivo de la AAA, conlleva la ejecución de funciones de alto nivel vinculadas a la gestión, supervisión de la corporación y atención de emergencias. Por lo tanto, no estamos ante un escenario de un servidor público que utilizó los deberes y las facultades de su cargo para beneficiarse a sí mismo, a una persona privada o a un negocio, ya fuera de manera directa o indirecta.

---

[14]Íd., pág. 204.

[15]Íd., *Informe de la Oficial Examinadora*, pág. 105.

De igual manera, no es sostenible concluir que al señor Arroyo Muñiz no le aplicaba la excepción prevista en la OA-2015-03, *supra*, ni que la autorización otorgada por el señor Díaz Atienza para utilizar las instalaciones de la corporación en Aguadilla constituyó un beneficio personal.[16] La excepción contemplada en la OA-2015-03, *supra*, tiene justamente el propósito de atender situaciones como la del Vicepresidente Ejecutivo de la AAA, cuyo desempeño requiere flexibilidad en la entrega de vehículos oficiales para garantizar la continuidad operativa de la corporación. Cabe advertir, además, que la Ley Núm. 60-2014, *supra*, no contiene disposición alguna que limite o prohíba la aplicación de esa orden administrativa.

Esta conclusión se ve reforzada al considerar que muchas de las funciones del señor Arroyo Muñiz estaban directamente relacionadas con el manejo de emergencias, la coordinación de los Directorados y la implementación de planes de contingencia, tareas que claramente tienen impacto en la administración pública y en la prestación de servicios a la ciudadanía. Por tanto, catalogarlo como persona privada

---

[16]De hecho, la ASG, entidad con peritaje en los asuntos relacionados con la flota vehicular del Gobierno de Puerto Rico, señaló la posibilidad de que aquellas entidades con oficinas regionales puedan custodiar vehículos oficiales sin que esta función se limite a una sola sede. Véase, *Comparecencia especial de la Administración de Servicios Generales del Gobierno de Puerto Rico en calidad de amicus curiae*, pág. 4.

carece de sustento legal y contraviene la interpretación sistemática de la normativa aplicable.

Por consiguiente, el señor Arroyo Muñiz no puede ser considerado una persona privada a los efectos del análisis legal correspondiente y tampoco procede imputarle al peticionario que pretendió otorgarle un beneficio ilegal. En virtud de ello, el tercer elemento previsto en el Art. 4.2 (b) de la Ley Núm. 1-2012, *supra*, no se satisface en este caso.

A tales efectos, concluimos que la OEG no cumplió con su obligación de probar, mediante prueba clara, robusta y convincente <u>todos</u> los elementos exigidos en el inciso (b) del Art. 4.2 de la Ley Núm. 1-2012, *supra*, para responsabilizar al señor Díaz Atienza.

**IV**

Por los fundamentos antes expresados, se revoca la *Sentencia* emitida por el Tribunal de Apelaciones y se deja sin efecto la multa de $2,000.00.

Se dictará Sentencia de conformidad.

Luis F. Estrella Martínez<br>
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Oficina de Ética Gubernamental<br><br>Recurrido<br><br>v.<br><br>Elí Díaz Atienza<br><br>Peticionario | CC-2025-0163 | Certiorari |

Sentencia

En San Juan, Puerto Rico, a 2 de diciembre de 2025.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente Sentencia, se revoca la *Sentencia* emitida por el Tribunal de Apelaciones y se deja sin efecto la multa de $2,000.00.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. El Juez Asociado señor Candelario López emite la expresión de conformidad siguiente:

"Estoy conforme con la determinación revocatoria que emite hoy este Tribunal, pues entiendo que el foro intermedio incidió al confirmar la interpretación errada que realizó la OEG de su ley habilitadora.

Al resolver que el señor Díaz Atienza incurrió en violación del Artículo 4.2 de la *Ley Orgánica de la Oficina de Ética Gubernamental*, la OEG se extralimitó al catalogar al señor Yoniel Arroyo Muñiz como una persona privada, para efectos del precitado estatuto. A saber, la OEG realizó una interpretación excesivamente amplia al determinar que el señor Díaz Atienza utilizó sus facultades como Presidente Ejecutivo de la AAA para beneficiar ilegalmente al entonces Vicepresidente Ejecutivo de la misma agencia.

Con miras a fomentar la eficiencia de la

AAA, el señor Díaz Atienza le permitió a su Vicepresidente Ejecutivo, residente de Moca, entregar el vehículo oficial de la AAA en la sede de Aguadilla, en lugar de la de San Juan. Aun así, la OEG optó por interferir con la facultad discrecional del Presidente Ejecutivo de la AAA, catalogando a un funcionario público como persona privada, y obviando el hecho de que el puesto de Vicepresidente Ejecutivo de la AAA tenía como requisito la disponibilidad para laborar fuera del horario regular de trabajo. Es decir, tomando en cuenta que su subordinado podía ser convocado en cualquier momento, el señor Díaz Atienza entendió prudente que este debía tener acceso fácil a su vehículo oficial y le permitió entregarlo en la sede más cercana a su hogar. Por esa decisión administrativa, la OEG decidió penalizarle.

Debemos recordar que, si bien es cierto que la OEG se creó con el propósito de prevenir y penalizar el comportamiento delictivo de los funcionarios y empleados públicos que vulneren los principios básicos de una ética de excelencia en el desempeño de sus funciones, la Asamblea Legislativa no le delegó la facultad para interferir con las decisiones que realiza una agencia conforme la ley. *Pueblo v. Arlequín Vélez*, 204 DPR 117, 151-152 (2020). En el caso ante nos, el señor Díaz Atienza actuó conforme a sus facultades, y de ninguna manera vulneró sus obligaciones, ni el uso apropiado de bienes públicos.

Por tanto, la *Opinión* que hoy emite este Tribunal da un paso firme en preservar la autonomía de las agencias administrativas y las determinaciones de sus líderes. Al revocar la determinación de la OEG, avalamos la decisión del entonces Presidente Ejecutivo de la AAA de ejercer su discreción en la administración de los recursos a su disposición y fomentar la eficiencia de la agencia a su cargo."

La Jueza Presidenta Oronoz Rodríguez y el Juez Asociado señor Colón Pérez concurren sin opinión escrita.


                              Javier O. Sepúlveda Rodríguez
                              Secretario del Tribunal Supremo