Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| OFICINA DE ÉTICA GUMBERNAMENTAL  Recurrido  v.  ALEXANDER BURGOS OTERO  Recurrente | TA2025RA00190 | *Revisión Administrativa procedente de la Oficina de Ética Gubernamental*  Caso núm.: 23-28  Sobre: Violación al artículo 4.2, inciso (b), (r) y (s) de la Ley orgánica de la Oficina de Ética Gubernamental de Puerto Rico, Ley Núm. 1-2012, según enmendada |
|---|---|---|

Panel integrado por su presidenta, la Jueza Romero García, el Juez Pérez Ocasio y el Juez Robles Adorno.[1]

Robles Adorno, Juez Ponente.

**SENTENCIA**

En San Juan, Puerto Rico, a 9 de marzo de 2026.

El 22 de agosto de 2025, el señor Alexander Burgos Otero (el señor Burgos Otero o el recurrente) presentó ante nos una *Revisión Administrativa* en la que solicitó que revoquemos la *Resolución* emitida y notificada el 23 de junio de 2025 por la Oficina de Ética Gubernamental (OEG o la parte recurrida).

En el aludido dictamen, la OEG determinó que el señor Burgos Otero violentó el Artículo 4.2, incisos (b) y (r) de la *Ley Orgánica de la Oficina de Ética Gubernamental de Puerto Rico*, Ley Núm. 1 de 3 de enero de 2012, según enmendada, 3 LPRA sec. 1857a (Ley de Ética Gubernamental) y, por tanto, le impuso una multa global de $4,033.00.[2]

---

[1] Véase OATA-2025-170 del 3 de septiembre de 2025 en la que se designa al Juez Robles Adorno en sustitución del Juez Sánchez Ramos.
[2] Entrada Núm. 1 del caso TA2025RA00190 en el Sistema Unificado de Manejo y Administración de Casos (SUMAC), Apéndice 4, págs. 1-25.

Por los fundamentos que exponemos a continuación, confirmamos la *Resolución* recurrida.

**I.**

El caso de epígrafe inició el 9 de diciembre de 2022, cuando la parte recurrida presentó una *Querella* en contra del señor Burgos Otero.[3] En síntesis, la OEG manifestó que para el año 2019, el recurrente, mientras desempeñaba funciones como servidor público, utilizó de forma indebida su cargo de Legislador Municipal de Ciales para obtener un beneficio de licencia especial con paga. Ello, tras presentar dos certificaciones falsas con el fin de justificar dos periodos de ausencias en el Centro de Recepción de Llamadas del 3-1-1 (Centro 3-1-1) lugar en donde ejercía funciones como Telecomunicador I. Añadió que, las certificaciones adulteradas, timbradas y selladas por la Legislatura de Ciales, indicaban que el señor Burgos Otero fue convocado a dos sesiones legislativas para las fechas del 25 de enero de 2019 y el 21 de agosto de 2019. Lo anterior provocó, según la OEG, una ausencia injustificada por parte del recurrido y la concesión de un beneficio no dispuesto por ley.

Siendo así, la OEG le imputó al recurrente la violación de los incisos (b), (r) y (s) del Artículo 4.2 de la Ley de Ética Gubernamental, los cuales prohíben, esencialmente, que un servidor público, en el ejercicio de sus funciones, se aproveche de su posición y la propiedad pública, para ocasionar pérdidas al erario y fraccionar la integridad de la función gubernamental.

En respuesta, el 18 de enero de 2023, el señor Burgos Otero presentó una *Contestación a la Querella*.[4] En suma, negó la mayoría de las imputaciones en su contra y añadió, como defensa afirmativa,

---

[3] *Íd.*, Apéndice 6, págs. 1-4.
[4] *Íd.*, Apéndice 7, págs. 1-5.

la inexistencia de una causa de acción por tratarse de una querella compuesta de meras conjeturas.

El 23 de mayo de 2023, la Oficial Examinadora emitió una *Orden* en la que autorizó al recurrente a deponer al señor Ángel Rivera Stella (el señor Rivera Stella) en un término de veinte (20) días improrrogables, salvo justa causa.[5]

Transcurrido el término provisto, el 5 de julio de 2023, la Oficial Examinadora emitió una *Orden* en la que dio por concluido el descubrimiento de prueba y ordenó al recurrente a exponer las razones por la cual no debía proceder con la anotación de la rebeldía.[6]

Así pues, el 15 de julio de 2023, el señor Burgos Otero presentó una *Moción en cumplimiento de orden* en la que solicitó continuar con el descubrimiento de prueba.[7] Resaltó que, las gestiones realizadas para contactar al señor Rivera Stella resultaron infructuosas. Particularmente, luego de intentar contactar al deponente al número telefónico provisto por la parte recurrida.[8] Por lo tanto, suplicó al foro adjudicador que dejara sin efecto dar por concluido el descubrimiento de prueba, ordenar a la OEG a contactar al señor Rivera Stella y desistir de la imposición de rebeldía.

El 16 de agosto de 2023, la Oficial Examinadora emitió una *Orden* en la que permitió completar el descubrimiento de prueba del presente caso dentro de un término final de treinta (30) días calendario.[9]

---

[5] *Íd.*, Anejo 17, págs. 1-2.
[6] *Íd.*, Anejo 21.
[7] *Íd.*, Anejo 23.
[8] En la *Moción en cumplimiento de orden* el recurrente anejó una copia de los mensajes de texto que cursó al señor Rivera Stella el 3 de julio de 2023 a las 12:39pm y a las 2:22pm. Allí, la representación legal del recurrente le notificó al deponente su interés de coordinar una fecha para la deposición, la cual no recibió respuesta.
[9] Entrada Núm. 1 del caso TA2025RA00190 en el SUMAC, Anejo 22, pág. 1-2.

Tras varios trámites procesales, el 2 de septiembre de 2023, el recurrido desistió de continuar con la deposición del señor Rivera Stella.[10]

Así las cosas, la vista administrativa ante la Oficial Examinadora fue celebrada los días 30 y 31 de enero de 2024 y el 1 de febrero del mismo año.[11] Posteriormente, el 3 de junio de 2025, el Oficial Examinador emitió un *Informe* en el que determinó que, el recurrente violentó los incisos (b) y (r) del Artículo 4.2 de la Ley de Ética Gubernamental, *supra*, y procedía la imposición de una multa de conformidad a la discreción provista por el inciso (c) del Artículo 4.7 del referido estatuto.[12] Asimismo, la Oficial Examinadora sugirió implantar una medida administrativa de restitución por la suma de $33.00, al amparo del Artículo 4.7 inciso (c)(2) de la citada ley. Finalmente, recomendó el archivo de la imputación a la violación del Artículo 4.2 inciso (s) de la mencionada ley.

El 20 de junio de 2025, notificada el 23 de junio de 2025, el Director Ejecutivo de la OEG emitió la *Resolución* recurrida.[13] Mediante el aludido dictamen, se acogió en su totalidad la recomendación suscrita por el Oficial Examinador y, de conformidad, se le impuso una multa de $2,000.00 al recurrente por cada una de las infracciones a los incisos (b) y (r) del Artículo 4.2 de la Ley de Ética Gubernamental, *supra*, más un pago de restitución a favor del Negociado de Sistemas de Emergencias 9-1-1 por la cantidad de $33.00 para una suma total de $4,033.00.

Insatisfecho, el recurrente interpuso una *Solicitud de Reconsideración* el 8 de julio de 2025.[14] Allí, señaló la comisión de cuatro errores relacionados a la apreciación de la prueba, aplicación

---

[10] *Íd.*, Anejo 26, pág. 1-4.
[11] Véase *Minuta*, Entrada Núm. 1 del caso TA2025RA00190 en el SUMAC, Anejo 34, pág. 1-3.
[12] Entrada Núm. 1 del caso TA2025RA00190 en el SUMAC, Apéndice 4, pág. 5-25.
[13] *Íd.*, Apéndice 4, pág. 1-4.
[14] *Íd.*, Apéndice 5, pág. 1-25.

errónea del derecho y obstrucción en los trámites procesales. Cónsono con ello, suplicó al foro adjudicador revocar la *Resolución* recurrida en el caso de autos.

Evaluado el recurso de reconsideración, el 23 de julio de 2025, el Director Ejecutivo de la OEG emitió y notificó una *Resolución en Reconsideración* en la que concluyó que los fundamentos incoados por el señor Burgos Otero no eran suficientes para dictar en contrario.[15] Por lo antes, denegó la *Solicitud de Reconsideración* presentada por el recurrente.

Inconforme, el 22 de agosto de 2025, el señor Burgos Otero presentó un recurso de *Revisión Administrativa* en el que reafirmó la comisión de los errores previamente planteados en reconsideración, a saber:

> Primer error: La O.E.G. comete error al concluir que la acción del Querellado-Recurrente al entregar dos (2) certificaciones de la legislatura municipal de Ciales, ante su patrono (Sistema 3-1 1), de por sí solas configuran una conducta en violación a los incisos (b) y (r) del Artículo 4.2 de la Ley 1-2012, según enmendada y conocida como la Ley Orgánica de la Oficina de Ética Gubernamental.

> Segundo error: La O.E.G. comete error al considerar responsable al Querellado-Recurrente por el contenido de la certificación presentada ante el Sistema 3-1-1, a pesar de ausencia de prueba clara, robusta y convincente en el expediente que concluya que éste tuvo que ver en su confección.

> Tercer error: La O.E.G. comete error al concluir que en consideración al Permiso para Ausentarse provisto por el Sistema 311 estaba adoptado conforme a derecho y que con ello se aprobó la licencia especial conferida mediante el Artículo 4.014 de la Ley 81-1991, Ley de Municipios Autónomos de Puerto Rico, (hoy derogada).

> Cuarto error: La O.E.G. cometió error al limitar a la Parte Recurrente poder impugnar efectivamente el testimonio del Sr. Ángel Rivera Stella a lo largo del caso para darle absoluta credibilidad a dicho testigo a pesar de éste tener animosidad, parcialidad y motivación contra el Querellado.

Luego de varios asuntos procesales, este foro apelativo emitió una *Resolución,* el 2 de octubre de 2025, en la que se le ordenó al

---

[15] *Íd.*, Apéndice 2, pág. 1-6.

recurrente a transcribir la totalidad de la audiencia transcurrida en el foro administrativo. Así las cosas, el 22 de octubre de 2025, el señor Burgos Otero presentó ante esta Curia una *Moción Informativa y en cumplimiento de orden* en la que notificó haber enviado copia de la transcripción solicitada a la OEG. En respuesta, la parte recurrida sometió una *Moción en cumplimiento de Resolución* en la que identificó objeciones en la transcripción de la prueba oral.

Así pues, el 29 de diciembre de 2025, el recurrente suscribió un *Alegato Suplementario* con el fin de sustentar sus señalamientos de error con relación a la transcripción de la prueba oral.

Por su parte, el 30 de enero de 2026, la parte recurrida presentó ante este Tribunal un *Alegato en oposición a Revisión Administrativa.*

En cumplimiento con nuestra *Resolución*, el 1 de febrero de 2026, el recurrente, a solicitud de este Tribunal, presentó ante nos la transcripción oral estipulada por las partes.

Con el beneficio de la comparecencia de ambas partes, la totalidad del expediente y la transcripción oral de la vista administrativa, procedemos a disponer del asunto ante nuestra consideración, no sin antes delimitar la normativa jurídica aplicable.

**II.**

**A.**

La *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico*, Ley Núm. 38 de 2017, según enmendada, 3 LPRA secs. 9601 et seq., (LPAU) establece el alcance de la revisión judicial de las determinaciones de las agencias administrativas. A tenor de esta y la jurisprudencia aplicable, la revisión judicial consiste, esencialmente, en determinar si la actuación de la agencia se dio dentro de las facultades que le fueron conferidas por ley, si es compatible con la política pública que la origina y si es legal y razonable. *O.E.G v. Diaz Atienza*, 2025 TSPR 128; *Capó Cruz v. Junta*

*de Planificación,* 204 DPR 581, 590-591 (2020). La Revisión Judicial es aplicable a aquellas órdenes, resoluciones y providencias adjudicativas finales dictadas por agencias o funcionarios administrativos que serán revisadas por el Tribunal de Apelaciones. *Capó Cruz v. Junta de Planificación,* supra; 3 LPRA sec. 9671. La Revisión Judicial de determinaciones administrativas responde principalmente a delimitar la discreción de las agencias y velar que ejerzan sus funciones conforme a la ley. *Mun. De San Juan v. J.C.A.,* 149 DPR 263, 279 (1999); *Simpson, Passalacqua v. Quirós, Betances,* 214 DPR 370, 375 (2024). La intervención judicial se rige por los parámetros establecidos en la LPAU. *Simpson, Passalacqua v. Quirós, Betances, supra.* Asimismo, la sección 4.2 de la LPAU establece que:

> Una parte adversamente afectada por una orden o resolución final de una agencia y que haya agotado todos los remedios provistos por la agencia o por el organismo administrativo apelativo correspondiente podrá presentar una solicitud de revisión judicial ante el Tribunal de Apelaciones, dentro de un término de treinta (30) días contados a partir de la fecha del archivo en autos de la copia de la notificación de la orden o resolución final de la agencia o a partir de la fecha aplicable de las dispuestas en la Sección 3.15 de esta Ley cuando el término para solicitar la revisión judicial haya sido interrumpido mediante la presentación oportuna de una moción de reconsideración.

*Íd.* 3 LPRA sec. 9672.

El mecanismo de revisión judicial se extiende a aquellas órdenes, resoluciones y providencias adjudicativas finales dictadas por las agencias o funcionarios administrativos. *Simpson, Passalacqua v. Quirós, Betances, supra,* pág. 378. La LPAU no define lo que es una orden o resolución final, pero, el Tribunal Supremo ha definido una orden o resolución final como "las decisiones que ponen fin al caso ante la agencia y que tienen efectos sustanciales sobre las partes". *J. Exam Tec. Med. V. Elías et al.,* 144 DPR 483, 490 (1997). La orden o resolución final, resuelve todas las controversias pendientes ante la agencia y da finalidad al proceso

administrativo. *Simpson, Passalacqua v. Quirós, Betances, supra*, pág. 378 (citando a *Miranda Corrada v. DDEC et al.*, 211 DPR 738, 741–742 (2023)); *Fonte Elizondo v. F & R Const.*, 196 DPR 353, 358 (2016); *ARPe v. Coordinadora*, 165 DPR 850, 867 (2005); *Crespo Claudio v. OEG*, 173 DPR 804, 813 (2008); *Comisionado Seguros v. Universal*, 167 DPR 21, 28 (2006). Las decisiones administrativas que no cumplan ese criterio no son revisables judicialmente. *Simpson, Passalacqua v. Quirós, Betances, supra*, pág. 378.

**B.**

Los organismos administrativos merecen la mayor deferencia posible de los tribunales. Tal deferencia se apoya en que las agencias administrativas tienen conocimiento experto y la experiencia especializada de los asuntos que le son encomendados. *Katiria's Café, v. Mun. de San Juan*, 2025 TSPR 33, 215 DPR ___ (2025); *Otero Rivera v. USAA Fed. Savs. Bank,* 214 DPR 473, 484 (2024). Un principio establecido es que las determinaciones de las agencias administrativas tienen una presunción de legalidad y corrección en la que no deben intervenir los tribunales. *Rolón Martínez v. Supte. Policía,* 201 DPR 26, 35 (2018). Las determinaciones de hecho de las agencias tienen a su favor una presunción de regularidad y corrección que debe ser respetada mientras la parte que las impugne no demuestre evidencia suficiente que rebata la presunción de legalidad y corrección. *Katiria's Café v. Mun. de San Juan*, supra. Nuestro Tribunal Supremo ha expresado las determinaciones de hecho serán sostenidas por el tribunal, si se basan en evidencia sustancial que no obra en el expediente administrativo. *Vázquez et al. v. DACo,* 2025 TSPR 56, 216 DPR ___ (2025).

El Máximo Foro judicial ha definido evidencia sustancial como aquella "que una mente razonable podría aceptar como adecuada para sostener una conclusión." *Otero v. Toyota*, 163 DPR 716, 728 (2005) citando a *Misión Ind P.R. v. J.P.,* 146 DPR 64, 131 (1998). La

parte que impugne una determinación de hecho de una agencia debe convencer al foro apelativo que la determinación de hecho no fue basada en evidencia sustancial. *Otero v. Toyota, supra*, pág. 728. Para rebatir la determinación que cuestiona, debe demostrar que existe otra evidencia en el expediente que reduzca el valor probatorio. *Íd.* Si la parte no demuestra en la revisión judicial otra evidencia sustancial que sostenga la determinación de la agencia, entonces no alterará la determinación de la agencia. *Íd.*

La parte que alegue ausencia de evidencia sustancial debe demostrar que existe:

> [O]tra prueba en el récord que razonablemente reduzca o menoscabe el peso de tal evidencia, hasta el punto de que un tribunal no pueda, concienzudamente, concluir que la evidencia sea sustancial . . . hasta el punto de que se demuestre claramente que la decisión del organismo administrativo no está justificada por una evaluación justa del peso de la prueba que tuvo ante su consideración.
>
> *Metropolitan SE v. ARPe*, 138 DPR 200, 213 (1995) (citando a *Hilton Hotels v. Junta de Salario Mínimo*, 74 DPR 670, 686 (1983)) (cita depurada).

Por otro lado, respecto a las conclusiones de derecho, la LPAU señala que éstas pueden ser revisadas en todos sus aspectos. Sec. 4.5 de la LPAU, 3 LPRA sec. 9675. Las conclusiones de derecho serán revisables en todos sus aspectos por un tribunal. *Vázquez et al. v. DACo, supra.* La interpretación de la ley es una tarea que le corresponde a los tribunales y como corolario, los tribunales deben revisar las conclusiones de derecho en todos sus aspectos. *Íd.*

No obstante, la deferencia reconocida a la decisión de una agencia administrativa cede en las siguientes circunstancias: (1) cuando no está basada en evidencia sustancial; (2) cuando el organismo administrativo ha errado en la aplicación de la ley, y (3) cuando ha mediado una actuación irrazonable o ilegal. Si el tribunal no se encuentra ante alguna de estas situaciones, aunque exista más de una interpretación razonable de los hechos, debe sostener

la que seleccionó la agencia encargada. *Otero v. Toyota, supra,* pág. 730.

**C.**

La Ley de Ética Gubernamental, *supra,* tiene como propósito, entre otros, educar a los servidores públicos para que, al desempeñar sus funciones, exhiban los valores que rigen la administración pública. 3 LPRA sec. 1855. Cónsono con ello, la OEG tiene la facultad de imponer sanciones civiles y penales a aquellos funcionarios públicos que infrinjan las disposiciones de la Ley de Ética Gubernamental. Las multas administrativas podrán ser impuestas hasta un máximo de $20,000.00 por violación. 3 LPRA sec. 1875f.

Pertinente al caso de autos, el Artículo 4.2 de la referida ley, el cual establece las prohibiciones éticas de carácter general, dispone que:

(E) [. . .]

(b) Un servidor público no puede utilizar los deberes y las facultades de su cargo ni la propiedad o los fondos públicos para obtener, directa o indirectamente, para él o para una persona privada o negocio, cualquier beneficio que no esté permitido por ley.

[. . .]

(r) Un servidor público no puede omitir el cumplimiento de un deber impuesto por ley o reglamento, si con ello ocasiona la pérdida de fondos públicos o produce daño a la propiedad pública.

(s) Un servidor público no puede llevar a cabo una acción que ponga en duda la imparcialidad e integridad de la función gubernamental.

3 LPRA sec. 1857a.

**D.**

La derogada Ley de Municipios Autónomos de Puerto Rico, Ley Núm. 81 de 30 de agosto de 1991, según enmendada, fue promulgada con el propósito de conceder a los municipios mayor independencia fiscal y reducir la intervención del Gobierno Central

en los asuntos municipales. 21 LPRA sec. 4001. Al así hacer, se les concedió poderes legislativos y ejecutivos para cumplir con cualquier función que redunde en un asunto de naturaleza municipal para obtener el bienestar de la comunidad. 21 LPRA sec. 4051(o).

Las facultades legislativas conferidas por la mencionada ley serán ejercidas por una Legislatura Municipal. 21 LPRA sec. 4151 Para cumplir con dicha encomienda, la Legislatura Municipal estará compuesta de miembros electos por el voto directo de los electores del municipio en cada elección general. 21 LPRA sec. 4153. En lo particular, los Legisladores Municipales, a la vez que cumplen sus términos de elección, podrán ocupar o desempeñar cualquier otro empleo o cargo general en el Gobierno de Puerto Rico que no sea un cargo público electivo. 21 LPRA sec. 4154d.

Referente al caso de epígrafe, los legisladores municipales que a su vez sean empleados de cualquier entidad pública tendrán derecho a una licencia especial con derecho a paga por justa causa. Para obtener el beneficio, **la Legislatura deberá remitir, por escrito, la citación de la reunión al legislador municipal y, posteriormente, el legislador municipal será el responsable de presentar la certificación en la entidad pública pertinente para la adjudicación de la licencia.** 21 LPRA sec. 4165**.**

### E.

La Ley para la Atención Rápida de Llamadas de Emergencias 9-1-1, Ley 144-1994, según enmendada, viabilizó el establecimiento del Sistema de Emergencias 9-1-1 de forma centralizada para recibir todas las llamadas de solicitud de emergencias. Posteriormente, la Ley 126-2011 enmendó la mencionada Ley 144-1994, *supra,* para crear un sistema de atención al ciudadano que fraccionara las solicitudes que no constituyeran una emergencia.

En aras de lograr un manejo eficiente de los sistemas gubernamentales, se le encomendó al Sistema de Emergencias 9-1-1 establecer y desarrollar el Sistema de Atención al Ciudadano 3-1-1. Así las cosas, la Junta de Gobierno del Servicios 9-1-1 se encargó de implementar las medidas necesarias para establecer, desarrollar y administrar la presentación de servicio a través del Sistema de Atención al Ciudadano 3-1-1.

Por su parte, la Ley del Sistema de Atención al Ciudadano 3-1-1, Ley Núm. 77-2019, según enmendada, reorganizó la administración de atención ciudadano del Sistema de Atención al Ciudadano 3-1-1. Al así hacerlo, facultó al Departamento de Estado a crear el Sistema de Atención al Ciudadano 3-1-1 con el fin de administrar las funciones, operaciones y servicios que no constituyen emergencias. Ley Núm. 77-2019, *supra,* Sección. 6. Por consiguiente, se ordenó al Comisionado del Negociado de Sistemas de Emergencias 9-1-1 a realizar todas las gestiones procedentes para garantizar efectividad en la transferencia. *Íd.*, Sección. 7.

**F.**

El Reglamento de Personal para los Empleados de Carrera de la Junta de Gobierno del Servicio 9-1-1, (Reglamento del Personal del Servicio 9-1-1) fue creado en cumplimiento con la derogada Ley del Personal del Servicio Público de Puerto Rico, Ley Núm.5 del 14 de octubre de 1975, según enmendada. En esencia, su propósito está enmarcado en la creación de normas y procedimientos que rigen la administración de recursos humanos para la Junta de Gobierno del Servicio 9-1-1. Por consiguiente, su aplicabilidad rige para todos los empleados de carrera que formen parte de la Junta de Gobierno del Servicio 9-1-1. Artículo I al IV del Reglamento del Personal del Servicio 9-1-1.

En lo pertinente al caso de epígrafe, el inciso 11 de la sección 13.04 del Reglamento del Personal del Servicio 9-1-1 discute la

concesión de licencias para Legisladores Municipales. En esa línea, el referido inciso reza como sigue:

> Los Legisladores Municipales que sean empleados de nuestra agencia tendrán un derecho a una licencia especial por causa justificada con derecho a paga. Esta licencia no deberá exceder un máximo de cinco (5) días anuales laborables, no acumulables. Además, tendrán derecho a una licencia sin sueldo que no excederá de cinco (5) días anuales laborales no acumulables independientemente de cualquier otra a la que ya tenga derecho. Ambas licencias serán utilizadas para asistir a Sesiones de la Asamblea y a reuniones y vistas oculares de estas con el propósito de desempeñar actividades legislativas municipales. La asamblea deberá remitir por escrito en cualquiera de las dos (2) licencias especiales, la citación a la reunión correspondiente al legislador municipal por lo menos veinticuatro (24) horas antes. El legislador municipal tendrá la responsabilidad de presentar la misma a nuestra agencia para la adjudicación de la licencia especial que aplique a estos efectos.

Expuesto el marco jurídico aplicable, procedemos a disponer del asunto ante nuestra consideración.

### III.

En el presente caso, el señor Burgos Otero cuestiona la *Resolución* dictada en su contra, mediante la cual le fue impuesta una multa global de $4,033.00. Argumentó que, la OEG incidió en la comisión de cuatro (4) errores concernientes a aspectos procesales, cuestiones de derecho y a la apreciación de la prueba.

Por su estrecha relación atenderemos el primer y segundo error en conjunto.

En cuanto al primer señalamiento de error, el recurrente esgrimió que, la prueba presentada no satisface el estándar de prueba aplicable. Particularmente, al concluir que, la mera entrega de una certificación no configura evidencia clara, robusta y convincente. Asimismo, en su segundo planteamiento de error enfatizó que resulta inconsecuente imputarle responsabilidad al señor Burgos Otero por el contenido de las certificaciones emitidas por la Legislatura Municipal de Ciales, cuando la Ley Núm. 81-1991, *supra,* no impone tal condición.

Según pormenorizamos en el acápite anterior, el Artículo 4014 de Ley Núm. 81-1991, *supra,* dispone que los legisladores municipales, que a su vez sean empleados de cualquier entidad pública, tendrán derecho a una licencia especial con derecho a paga por justa causa. Para obtener el beneficio, la Legislatura Municipal deberá remitir, por escrito, la citación de la reunión al legislador municipal y, posteriormente, el legislador municipal será el responsable de presentar la certificación en la entidad pública pertinente para la adjudicación de la licencia. Ley Núm. 81-1991, *supra* sec. 4165**.**

Un análisis del expediente en el presente caso refleja que, el señor Burgos Otero presentó ante el Sistema 3-1-1 dos (2) certificaciones emitidas por la Legislatura de Ciales con el fin ulterior de obtener para sí un beneficio de licencia especial con paga. El referido documento certificaba la asistencia del recurrente en actividades oficiales que constituían parte de sus funciones legislativas. Es decir, con la información habilitada en la certificación, el recurrente buscaba justificar la adquisición de una licencia. Sin embargo, la prueba presentada por la OEG demostró, no solamente la falsedad del documento, sino la inexistencia de las alegadas reuniones o sesiones estimadas por el recurrente. Resulta forzoso concluir que, el recurrente obtuvo el beneficio de una licencia especial sin demostrar justa causa.

Resaltamos que, en el caso de autos no se le impuso una obligación al recurrente de revisar la veracidad del documento, en cambio, el incumplimiento de su deber surge al adquirir un beneficio injustificado. Máxime, cuando conocía o debió conocer la falsedad de la justificación provista. Incluso, fue el propio recurrente quien entregó las certificaciones anejadas a la solicitud de ausencia que comprendían su firma. Por ende, el recurrente no tiene méritos en el primer ni segundo error señalado.

Por otro lado, con respecto al tercer señalamiento de error, el señor Burgos Otero esgrime que la OEG carece de base legal para imputarle responsabilidad al recurrente en conformidad con el Reglamento del Personal del Servicio 9-1-1, inaplicable para los empleados del Sistema 3-1-1.

A tenor con el marco jurídico esbozado, la Ley Núm. 77-2019, *supra*, aprobada el 27 de julio de 2019, viabilizó el fraccionamiento del Sistema 9-1-1 y el Sistema 3-1-1.[16] Así, el estatuto facultó al Departamento de Estado a crear el Sistema de Atención al Ciudadano 3-1-1 con el fin de administrar las funciones, operaciones y servicios que no constituyeran emergencias. Ley Núm. 77-2019, *supra,* Sección 6. Por consiguiente, se ordenó al Comisionado del Negociado de Sistemas de Emergencias 9-1-1 a realizar todas las gestiones procedentes para garantizar la transferencia de manera efectiva. *Íd.*, Sección 7.

Cónsono con lo anterior, en el caso de autos, para el 25 de agosto de 2019 el señor Burgos Otero recibió el beneficio de licencia con paga bajo el palio del Sistema 9-1-1, quien aún sufragaba el salario del recurrente, mientras este se desempeñaba como Telecomunicador I en el Sistema 3-1-1.[17] Nótese que, la transferencia del señor Burgos Otero al Departamento de Estado no fue efectiva sino hasta el 31 de enero de 2020.[18] Entiéndase que, aun cuando la Ley Núm. 77, *supra,* ordenó la transferencia del Sistema 3-1-1 a partir de su vigencia, su efectividad surgió con posterioridad. A esos efectos, para el 25 de agosto de 2019 el señor Burgos Otero todavía ejercía sus funciones en consideración a la normativa aplicable de la Junta de Gobierno. Consecuentemente, el Reglamento del Personal del Servicio 9-1-1 era de aplicabilidad al

---

[16] Véase, Exposición de Motivos de la Ley Núm. 77-2019, *supra.*

[17] Véase, Entrada Núm. 1, Exhibit 10; véase también, Entrada Núm. 37 del caso TA2025RA00190 en el SUMAC, Transcripción Estipulada, pág. 45-48.

[18] Véase, Entrada Núm. 1, Exhibit 1.

recurrente en el caso de epígrafe y, por ello, colegimos que no se cometió el tercer error señalado.

Finalmente, el cuarto señalamiento de error versa sobre la limitación del foro adjudicador para que el recurrente impugnara efectivamente el testimonio del señor Rivera Stella. Ello, toda vez que, la Oficial Examinadora pasó juicio sobre la imposibilidad del recurrente deponer al señor Rivera Stella. Asimismo, alegó que, durante el contrainterrogatorio se le impidió consignar que el pleito presentado contra el señor Rivera Stella causó animosidad para con el recurrente.

En primer lugar, según consta en el expediente administrativo ante nuestra consideración, el 23 de mayo de 2023, la Oficial Examinadora autorizó la deposición del señor Rivera Stella en un término de veinte (20) días improrrogables, salvo justa causa. Transcurrido el término provisto y en ausencia de solicitud de prórroga, el foro administrativo dio por concluido el descubrimiento de prueba. Posteriormente, el recurrente presentó evidencia de los esfuerzos infructuosos para contactar al señor Rivera Stella. Al así proceder, el 16 de agosto de 2023, se les concedió a las partes un término final de treinta (30) días calendario para completar el descubrimiento de prueba. En cambio, el 2 de septiembre de 2023, el señor Burgos Otero desistió de continuar con la deposición del señor Rivera Stella.

Ciertamente, la agencia administrativa no limitó la oportunidad del recurrente de realizar la mencionada deposición. De hecho, cabe destacar que se le concedió un término adicional para completar el descubrimiento de prueba, pese a que el recurrente no compareció en tiempo para solicitar la debida prórroga.

En segundo lugar, surge de la transcripción de la audiencia administrativa que obra ante nos que, contrario a lo que alega el recurrente, la Oficial Examinadora le permitió realizar las preguntas

pertinentes para impugnar al señor Rivera Stella. En esa línea, procedemos a citar lo allí sucedido, según obra de la transcripción:

LCDO. CRUZ: Mire le pregunto si usted, después de eso, entonces hizo afinidad con el señor Alexander Burgos, para que fuera Alexander Burgos el que pudiera correr como alcalde. ¿Correcto?

SR. RIVERA: Sí señor.

LCDO. CRUZ: Y esa afinidad, estamos hablando del veinte diecinueve. Veinte diecinueve. Es posterior al arresto de este señor, ¿Correcto?

SR. RIVERA: Sí señor.

LCDO. CRUZ: Bien. La pregunta que le hizo la compañera, porque, es que, no quiero que se pierda, fueron del veinte diecinueve. Le acabo de preguntar, que esto ocurrió a finales del veinte diecinueve, y había afinidad con el señor Alexander.

SR. RIVERA: Correcto.

LCDO. CRUZ: ¿Verdad que sí? Y lo correcto es decir, que esa afinidad, esa buena comunicación, duró más o menos hasta abril o mayo del veinte veinte. ¿Correcto?

SR. RIVERA: Eso es correcto.

LCDO. CRUZ: Y lo correcto es decir que se rompió esa afinidad, porque este señor radicó una demanda contra el Municipio de Ciales, por la aprobación del presupuesto, y en esa demanda lo incluyó a usted.

LCDA. VAZQUEZ: Esa, esa es compuesta Oficial. Se eh, hay 5 muchas aseveraciones ahí.

EXAMINADORA: Reformule Licenciado por favor.

LCDO. CRUZ: ¿Si este señor, demandó, don Alexander Burgos demandó al Municipio de Ciales, incluyéndolo a usted en su plano personal, por la aprobación del presupuesto en el año veinte veinte?

SR. RIVERA: La fina...la afinidad no se rompió Licenciado.

LCDO. CRUZ: No se rompió en esa ocasión.

SR. RIVERA: No se rompió.

LCDO. CRUZ: De hecho, entre agosto, entre noviembre veinte diecinueve, y hasta abril o mayo, veinte veinte, de hecho, usted fue el director de campaña de este caballero. ¿Verdad que sí?

SR. RIVERA: Nunca fui el director de campaña...

LCDO. CRUZ: Nunca fue el director de campaña.

SR. RIVERA: ...nunca.

LCDO. CRUZ: ¿Usted lo apoyó públicamente?

SR. RIVERA: Sí señor.

LCDO. CRUZ: Posterior a ese momento de la demanda, la relación entre usted y él no fueron las mejores.

SR. RIVERA: Había una buena relación. Se mantuvo una buena relación.

LCDO. CRUZ: ¿Está seguro?

SR. RIVERA: Segurísimo.

LCDA. VAZQUEZ: Esta contestada Oficial.

LCDO. CRUZ: Usted está bajo juramento.

SR. RIVERA: Lo sé.

LCDA. VAZQUEZ: Oficial esta contestada.

EXAMINADORA: Continúe Licenciado con la próxima pregunta, por favor.[19]

Como puede apreciarse, el señor Burgos Otero interrogó al señor Rivera Stella respecto a la relación que estos circunscribían antes y después de la causa de acción interpuesta por el recurrente. Inclusive, las objeciones surgen por cuestiones de forma que no menoscabaron el fundamento sustantivo. No obstante, en más de una ocasión el testigo contestó las interrogantes respecto a la afinidad del señor Rivera Stella con el recurrente.

Surge de la transcripción de la audiencia que conforme a la totalidad del contrainterrogatorio efectuado al señor Rivera Stella, la Oficial Examinadora no permitió una sola pregunta, a saber:

LCDO. CRUZ: Oiga le pregunto, si la razón por la cual, usted dejó de apoyar a Ramón Morales, es porque esa persona fue acusada de corrupción después en el Tribunal Federal.

LCDA. VAZQUEZ: Pertinencia.

EXAMINADORA: Con lugar la objeción Licenciado.

---

[19] Entrada Núm. 37 del caso TA2025RA00190 en el SUMAC, Transcripción Estipulada, págs. 185-187, líneas 22-52, 1-52 y 1-5.

Atisbamos que, la exclusión de la interrogante no impidió al recurrente establecer la afinidad con el señor Rivera Stella. Ello, debido a que no estaba relacionada al marco de preguntas que buscaban denotar perjuicio en la credibilidad del testigo.

Añádase, de un análisis del expediente ante nos, el testimonio del señor Rivera Stella no es imprescindible para cumplir con los elementos de las violaciones imputadas al recurrente a tenor con la Ley de Ética Gubernamental, *supra.* El foro administrativo utilizó la declaración del señor Rivera Stella como parte de la evidencia para probar la inexistencia de las alegadas reuniones en controversia. No obstante, la parte recurrida presentó prueba adicional para fortalecer el estándar probatorio.

El testimonio de la señora Rosaura Vélez Otero, así como la señora Ramos, secretarias legislativas, y del señor José R. Domínguez Cristóbal, compañero legislador, admitidos en evidencia y acogidos por el foro adjudicador, constataron que las fechas señaladas en las certificaciones eran incongruentes a la práctica rutinaria legislativa y al archivo de asistencia del diario de sesiones.[20] Al así hacer, quedó evidenciado que para el 25 de enero de 2019 y el 21 de agosto de 2019, no fueron convocadas ni celebradas las actividades legislativas solicitadas por el recurrente.

Ciertamente, el señor Burgos Otero no logró demostrar que existe otra evidencia en el expediente que reduzca el valor probatorio. Por consiguiente, tal como apreciamos, resulta forzoso concluir que la Oficial Examinadora de la OEG no infringió el proceso de impugnación del recurrente. Por todo lo cual, el cuarto y último error tampoco se cometieron.

A la luz de los fundamentos esbozados, reiteramos que, el señor Burgos Otero no nos coloca en posición de descargar nuestras

---

[20] Véase, Entrada Núm. 37 del caso TA2025RA00190 en el SUMAC, Transcripción Estipulada, pág. 69, líneas 13-51; pág. 212, líneas 13-37; pág. 145, líneas 5-39.

facultades revisoras para dictar en contrario. En virtud de ello, colegimos confirmar al foro administrativo recurrido.

**IV.**

Por los fundamentos que anteceden, confirmamos la *Resolución* recurrida.

Lo acuerda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones